McNEAL v DEPARTMENT OF NATURAL RESOURCES

Docket No. 73583. Submitted June 20, 1984, at Lansing.—Decided February 6, 1985.

James McNeal was injured at Silver Lake State Park when the off-the-road vehicle in which he was riding turned over after cresting a sand dune and becoming airborne. McNeal filed suit in the Court of Claims, naming the Department of Natural Resources, the Michigan State Parks, and the State of Michigan as defendants and alleging gross negligence and willful and wanton misconduct on the part of the defendants in the operation of the state park. Defendants moved for summary judgment claiming that the operation of a state park is a governmental function entitling them to governmental immunity from tort liability and that they were also immune under the provisions of the recreational use statute. The court, James T. Kallman, J., granted summary judgment in favor of defendants, finding that allowing an off-the-road vehicle to be driven at Silver Lake State Park was a governmental function, that the Department of Natural Resources was also immune from liability under the provisions of the recreational use statute, and that plaintiff failed to allege facts sufficient to state a claim of gross negligence or willful and wanton misconduct. Plaintiff appealed. *Held:*

1. The maintenance and operation of a park and recreation system is a governmental function, entitling defendants in this case to governmental tort immunity in the operation of the off-the-road vehicle area at Silver Lake State Park. The area has been left substantially in its natural condition and is not used for a proprietary function.

2. The recreational use statute applies to state-owned property. The trial court did not err in granting immunity to the defendants by virtue of the recreational use statute.

3. Plaintiff failed to state a claim of gross negligence or of willful and wanton misconduct on the part of defendants.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 59 Am Jur 2d, Parks, Squares, and Playgrounds § 38.

[2, 4] 62 Am Jur 2d, Premises Liability § 37.

[3, 4] 57 Am Jur 2d, Negligence § 99.

[4] 57 Am Jur 2d, Negligence § 100.

1. GOVERNMENTAL IMMUNITY — STATE PARKS.

The maintenance and operation of a state park and recreation system wherein the lands are left substantially in their natural condition and are not used for a proprietary function is a governmental function entitling the state and agencies in charge of the operation of such areas to governmental tort immunity.

2. STATES — STATE LANDS — RECREATIONAL USE — NEGLIGENCE.

The recreational use statute applies to state-owned land (MCL 300.201; MSA 13.1485).

3. NEGLIGENCE — GROSS NEGLIGENCE — SUBSEQUENT NEGLIGENCE.

A claim for gross negligence is not made out by a pleading in which there is no allegation of the defendant's subsequent negligence.

4. NEGLIGENCE — RECREATIONAL USE — WILLFUL AND WANTON MIS-CONDUCT.

Willful and wanton misconduct, under the statute which limits the liability of a landowner for injuries to a person using the defendant's land for recreational purposes, is made out only if the conduct alleged shows an intent to harm or such indifference to whether harm will result as to be the equivalent of a willingness that it does (MCL 300.201; MSA 13.1485).

*Joel S. Morse,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Wallace T. Hart,* Assistant Attorney General, for defendants.

Before: MacKENZIE, P.J., and BEASLEY and J. R. KIRWAN,* JJ.

J. R. KIRWAN, J. Plaintiff appeals as of right from an order of a judge of the Court of Claims granting summary judgment in favor of all defendants.

Plaintiff filed a complaint against the Department of Natural Resources, Michigan State Parks, and the State of Michigan, alleging that he was a

* Circuit judge, sitting on the Court of Appeals by assignment.

passenger in an off-the-road vehicle (ORV) being driven in an area that permits the operation of such vehicles at Silver Lake State Park, which is owned and operated by the DNR. Plaintiff suffered serious injuries when the vehicle crested a hill, became airborne, and tipped over. After plaintiff had commenced his lawsuit, all defendants moved for summary judgment, alleging that they were immune from tort liability in connection with the operation of a state park by virtue of governmental immunity as well as the provisions of the recreational use statute. Plaintiff then amended his complaint, alleging gross negligence and willful and wanton misconduct. Thereafter, the trial court granted summary judgment, finding that allowing an ORV to be driven at Silver Lake State Park was a governmental function under MCL 691.1407; MSA 3.996(107); that the DNR was also immune from liability under the provisions of the recreational use statute, MCL 300.201; MSA 13.1485; and that the plaintiff failed to allege facts sufficient to state a claim of gross negligence or willful and wanton misconduct. Plaintiff claims error.

## I

Are the defendants immune from liability by virtue of the doctrine of governmental immunity for their alleged negligent acts which it is claimed caused serious injuries to the plaintiff?

The governmental tort immunity statute provides as follows:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity

of the state from tort liability as it existed heretofore, which immunity is affirmed." MCL 691.1407; MSA 3.996(107).

Three Michigan Court of Appeals cases, *Daugherty v Michigan,* 91 Mich App 658; 283 NW2d 825 (1979), *lv den* 408 Mich 853 (1980); *Feliciano v Dep't of Natural Resources,* 97 Mich App 101; 293 NW2d 732 (1980); and *Haselhuhn v The Huron-Clinton Metropolitan Authority,* 106 Mich App 461; 308 NW2d 190 (1981), have dealt with the issue of whether or not the operation of a state park is a governmental function. In *Daugherty, supra,* the Court held that the operation of a state park was not a governmental function and that the state was not, therefore, immune from liability. The Court said:

"In applying the law as stated in the recent decisions of our Supreme Court as we understand it, it appears that the operation of a recreational area is not 'of essence to governing' because it is not an activity which can be done only by government. Private recreational areas do exist and provide essentially the same services. Also under the analysis stated by Mr. Justice MOODY, in *Parker,* the instant case does not present a situation where the purpose, planning, carrying out of the activity, due to its unique character or governmental mandate, can be effectively accomplished only by government. In addition, liability would not be an unacceptable interference with the government's obligation to govern." 91 Mich App 663.

Shortly thereafter, another panel of this Court in deciding *Feliciano, supra,* disagreed in part with *Daugherty,* holding as follows:

"In summary, to the extent that *Daugherty, supra,* holds that *the entire spectrum* of the Department of Natural Resources statutory prescribed operation of the

Pinckney Recreation Area is not a governmental function, we disagree with *Daugherty.* But to the extent that case holds that the conduct and operation of a bathing and swimming area is a nongovernmental function to which the defense of immunity does not apply, we agree with the decision." (Emphasis in *Feliciano;* footnote omitted.) 97 Mich App 107-108.

In rejecting the broad scope of *Daugherty,* the panel distinguished between maintenance and operation of a park and recreation system, which by its magnitude must be a governmental function, and operation of a bathing beach, which is commonly performed by private enterprise.

In *Haselhuhn, supra,* a different panel of this Court cited with approval *Feliciano, supra,* holding that a groundskeeper whose duties supported the overall operation of a park was performing a governmental function and that defendant Huron-Clinton Metropolitan Authority was, therefore, immune from liability.

We view the decision in *Feliciano, supra,* the more reasoned approach and look, therefore, to the specific activity that is conducted by the DNR in determining whether or not that activity is cloaked with governmental immunity.

This Court has cited with approval the following language contained in Professor Cooperrider's article, *The Court, the Legislature, and Governmental Tort Liability in Michigan,* 72 Mich L Rev 187, 284-285 (1973):

" 'On the other hand, the defense also covers injuries causally relatable to conditions of publicly owned premises that, while left open for entry by the public, are not developed for intensive use. This would include areas such as large rustic parks, forest and other lands left substantially in their natural condition, and public waters other than supervised beach areas. The private

sector offers no analogy here, for no private party is the occupier of premises remotely comparable in extent.

" '* * * Such an area is offered for use without warranty, the user may fairly be said to have assumed the risk, and the applicable general principle should be one of nonliability. The function of providing public access to such areas, I would contend, is uniquely governmental.' "

The ORV area at Silver Lake is purposely left in its natural condition for use by the public. The only facility is a parking lot adjacent to the dune area with several warning signs nearby. The fact that an adjacent dune area is leased to a private dune buggy company does not convert the entire ORV site operation into a proprietary function. This area is, therefore, squarely within Professor Cooperrider's category of lands left substantially in their natural condition, and as this area was not used for a proprietary function, the defendants are cloaked with governmental tort immunity.

## II

Does the recreational use act, MCL 300.201; MSA 13.1485, apply to state-owned land so that the defendants as landowners are protected from liability for their acts of negligence?

It is useful to consider this issue because it is also dispositive of the case.

Plaintiff claims that the recreational use act does not apply to state-owned property and that his complaint has, therefore, set forth an actionable claim. This Court has acknowledged that the recreational use statute is applicable to publicly held lands. *Graham v Gratiot County,* 126 Mich App 385, 387; 337 NW2d 73 (1983). Further, the language of the holding of the Supreme Court opinion in *Burnett v City of Adrian,* 414 Mich 448;

326 NW2d 810 (1982), also supports this conclusion. In that case, the Court said:

"This is an appeal from a Court of Appeals affirmance of a summary judgment dismissing the plaintiffs' case for failure to state an actionable claim under the so-called recreational use statute, MCL 300.201; MSA 13.1485. The only question before us is whether the plaintiffs have alleged facts sufficient to state a claim for gross negligence or willful and wanton misconduct. Our task is thus limited because the recreational use law authorizes recovery in the circumstances of this case only if gross negligence or willful and wanton misconduct is shown." (Footnote omitted.) *Id.,* pp 453-454.

As the relevant authority supports the conclusion that the recreational use statute is applicable to municipally-owned lands, and as we find no valid reason to distinguish state-owned land from land owned by a local government, the trial judge did not err in granting immunity to the defendants by virtue of this statute.

### III

Has plaintiff alleged in his complaint sufficient facts to support the claim of gross negligence or willful and wanton misconduct so as to fall within the exception to the recreational use statute's blanket immunity?

MCL 300.201; MSA 13.1485 provides as follows:

"No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of said premises

unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee."

In order to set forth an actionable claim, plaintiff's complaint must, therefore, contain allegations of conduct on the part of the defendants that constitute either gross negligence or willful and wanton misconduct.

Gross negligence includes the concept of subsequent negligence. See *Burnett, supra,* p 461; *Graham, supra,* p 388. In other words, if the complaint does not include allegations of subsequent negligence, plaintiff has failed to state a claim of gross negligence. An examination of the complaint reveals that plaintiff complains of "failure to properly warn persons of the proper method for operating a vehicle—failure to properly maintain its sand dunes—and failure to properly protect the public". As these allegations pertain to alleged actions that defendants should have taken before plaintiff entered the park and are not allegations of subsequent negligence, plaintiff has failed to state a claim of gross negligence.

Whether plaintiff has set forth an actionable claim for willful and wanton misconduct is not so easily resolved. In *Burnett, supra,* the Court, while showing some dissatisfaction in the definition of willful and wanton misconduct as contained in *Gibbard v Cursan,* 225 Mich 311; 196 NW 398 (1923), nonetheless chose not to overrule that decision. The test as stated in *Gibbard* provides that in order to constitute willful and wanton misconduct, plaintiff must show:

" 'Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care

and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.' " 225 Mich 322, quoting 69 LRA 516 and 20 RCL 145.

The *Burnett* majority clarified this test, explaining that willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or such indifference to whether harm will result as to be the equivalent of a willingness that it does. *Burnett, supra,* p 456.

An examination of the complaint reveals that defendant's alleged conduct does not meet the threshold of willful and wanton misconduct. Plaintiff has not alleged facts equivalent to an assertion of defendant's intent to harm or of its indifference, which is equivalent to a willingness that harm would come to a person using the facilities in question. It is specifically noted that in the case at bar a potential harm was created by a natural condition and not by an artificial one, which was the circumstance in *Burnett, supra.* Further, defendants point out that the affidavit of Mr. Kraai in support of summary judgment was uncontroverted and established that three signs, each 72 inches by 34 inches with 10-inch letters warning of steep hills, were posted in the dune area, which set forth "DANGER STEEP HILL PAST THIS POINT". Further, it is uncontroverted that at the only entrance to the dune area, a 54-inch by 46-inch warning sign with 2-inch and 3-inch letters was conspiciously posted, stating:

"SILVER LAKE
ORV AREA
MOVING SAND UNCOVERS HAZARDS AND CHANGES IN TERRAIN RAPIDLY. DO NOT DRIVE OVER CREST OF A DUNE

WITHOUT KNOWING WHAT IS ON THE OTHER SIDE. DO
NOT GO UP OR DOWN DUNE DIAGONALLY
DRIVE SAFELY."

Based on all of these factors and under the standard articulated in *Gibbard* and reiterated in *Burnett,* plaintiff has failed to set forth conduct on the part of the defendants that amounts to willful and wanton misconduct.

Therefore, as plaintiff has not alleged in his complaint conduct on the part of the defendants that would avoid the immunity provision of the recreational use statute, plaintiff has failed to set forth a claim upon which relief can be granted.

Affirmed.